HIRAM C. HARRIMAN *vs.* READING AND LOWELL STREET
RAILWAY COMPANY.

Suffolk.    January 10, 1899. — March 2, 1899.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Personal Injuries — Street Railway — Action — Negligence — Witness
— Instructions — Service.*

If, in an action against a street railway corporation for personal injuries, there is evidence that the car in which the plaintiff was riding had run off the track about an hour before the accident, and that immediately before the accident it was running at the rate of fifteen or twenty miles an hour down a grade and around a curve, when it again ran off the track and caused the plaintiff's injury, no exception lies to the refusal to rule that, upon all the evidence in the case, the defendant had proved that there was no negligence on its part, and had overcome the effect of the evidence of the mere running off the track by the car, and to direct a verdict for the defendant.

In an action against a street railway corporation for personal injuries occasioned by a car running off the track, if there is evidence that the car had run off the track about an hour before the accident, and that immediately before the accident it was running at the rate of fifteen or twenty miles an hour down a grade and around a curve, when it again ran off the track and caused the plaintiff's injury, the jury are rightly instructed that they might infer negligence of the corporation from the occurrence of the accident, in the absence of any other adequate explanation.

At the trial of an action against a street railway corporation for personal injuries occasioned to the plaintiff by a car running off the track, the judge instructed the jury that, "if you say that either the track was not in proper condition, or the car was not in proper condition, that it was not being run, in view of the track and the car, at a proper rate of speed, and that that was the negligence that caused this accident, then the plaintiff has made out his right to recover." Upon objection by the defendant, the judge said: "Well, I did not mean to say just that. I meant to say that I want the jury to understand that the running off the track must have been due to some one or the other of those different things. Suppose the track was not perfect, or the car was not perfect, or the speed was too rapid, yet if this car did not leave the track because of some of those things, then I do not mean to say that you would say the plaintiff had the right to recover. It must be due to some one or the other of those things, as I said to you. It must be due to some imperfection, and that imperfection must be due to some negligence on the part of the person who had charge of the track, or the car, or the running of the car." *Held,* that the defendant had no ground of exception.

The defendant in an action commented in his argument upon the plaintiff's failure to call certain witnesses at the trial, and the judge instructed the jury, among other things, as follows: "It is oftentimes a matter that a jury have to consider, where testimony is within the reach of one party and not within the reach of

the other, and the party does not produce the testimony, . . . it is sometimes said that the jury have a right to infer that the party does not produce it when he can, because it would be against him if he did produce it. Sometimes that is true, where the witness is entirely within the power or within the control of one party or the other. But where the witness is equally within the reach of one party as well as the other, then the question would come whether there should be any inference drawn from the fact that neither party called him. . . . It is for the jury to say under all the circumstances what the fair inference is of leaving the witness off." *Held,* that the instructions were correct and sufficient.

No exception lies to an instruction to a jury that the only purpose of referring to the testimony given by the witnesses at a former trial of the case, where it varies from that given at the present trial, is to affect the weight of the latter; and if the exception taken gives the judge no intimation that the defendant understood his language to refer to the plaintiff as a party, it is not open to the defendant to contend that there was error because what the plaintiff had previously testified might be evidence against him in the nature of an admission.

If, in an action against a corporation, the officer's return on the writ recites a service upon the defendant by serving on its assistant treasurer, and no plea in abatement is filed, a motion to dismiss the action for want of proper service will not be sustained.

TORT, for personal injuries sustained by the plaintiff while a passenger in a car operated by the defendant, on January 28, 1896. Writ dated February 12, 1896; the *ad damnum* being $20,000. The return of the deputy sheriff on the writ recited a service upon the defendant by serving on its assistant treasurer. Trial in the Superior Court, before *Bond,* J., who allowed a bill of exceptions, in substance as follows.

It was in evidence that the car upon which the plaintiff was injured had run off the track about an hour before the accident in question; that the plaintiff started from Wakefield, going toward Wilmington, and met the car, which had been derailed coming in the opposite direction; that the car had been put back upon the track, and the plaintiff was transferred to it; that this car was behind time, running upon a road in the country; that just before the accident the car was running down a slight grade and around a curve; and that the car left the track just after passing the curve.

The plaintiff's brother testified that the car was going at a rate of fifteen or twenty miles an hour. The plaintiff testified that the car was going very fast. There was evidence that the forward trucks went off the tracks. This was all the evidence upon the question of liability introduced by the plaintiff.

The defendant introduced evidence that the place where the

accident happened was in Billerica; that the track was upon the side of the road; that the amount of the travel upon the road at the place of the accident did not exceed on an average five or six teams per hour; that the railroad was new, having been laid and built in October or November, 1895; that there was nothing the matter with the car or its wheels, trucks, or running gear; and that there was nothing the matter with the tracks, but that both the tracks and the wheels were gauged properly and were well built. This evidence was not contradicted.

The defendant also introduced the testimony of the motorman and conductor that the car was going, at the time of the accident, at the rate of only three or four miles an hour; and that not only was the motorman not trying to make up lost time or running fast because the car was behind time, but that he was too late to meet another car at the appointed switch therefor.

The plaintiff, his brother, the motorman, and the conductor were the only persons present at the time of the accident.

The defendant also introduced evidence that the only thing broken in or about the car by the accident, that is, by the running off the track, was one window at the rear end of the car, and this window was broken by the register coming down and swinging against it; that a part of the car remained upon the rails; and that, without any alteration or repairs being made to the car or its running gear, wheels, etc., the car was run from the place of the accident and returned to the Lynn and Boston Street Railway Company, which owned it, and thereafter used constantly by that corporation down to the time of the trial, without any accident or trouble by leaving the rails. This was all the evidence upon the question of liability in the case.

It appeared that the plaintiff had consulted and had been attended and examined by Dr. Cliff and Dr. Brooks, but he did not call either of them as witnesses, and offered no explanation or excuse for their absence; that Dr. Walton was first called to examine the plaintiff by the plaintiff's attending physician, Dr. Bowles; that immediately after the accident the plaintiff was taken to Dr. Sopher's office and examined by him; and that the plaintiff's counsel had talked with both Dr. Sopher and Dr. Walton previously to the trial, but neither was called to testify by the plaintiff.

Dr. Sopher testified that at his examination, immediately after the accident, he found no marks or bruises whatever of any kind upon the plaintiff.

Dr. Bowles, called by the plaintiff as a witness, declined to express an opinion as to what was the matter with the plaintiff, on the ground that he was not an expert in nervous diseases.

The defendant's counsel commented upon all these matters in his argument to the jury.

The defendant introduced evidence that, at a former trial of the case in October, 1897, the plaintiff testified that his condition in February, 1897, was about the same as his condition in July, 1896; and that in December, 1896, he knew of every injury and every result of any injury that he had received from this accident which he knew at the time of so testifying in October, 1897.

The defendant introduced in evidence the record of a second action, brought by the plaintiff for the same cause of action against the defendant in the Municipal Court, the writ being dated November 30, 1896, and the *ad damnum* being $2,000. This action was instituted by the same counsel for the plaintiff, and was prosecuted until January 11, 1897, when, upon hearing, a plea in abatement of *lis pendens* was sustained, and the writ was abated.

At the close of the evidence, the defendant asked the judge to rule that, upon all the evidence in the case, the defendant had proved that there was no negligence on its part, and had thus overcome the effect of the evidence of the mere running off of the track by the car, introduced by the plaintiff; and to direct a verdict for the defendant.

The judge refused this request; and the defendant excepted.

Among other things, the judge instructed the jury as follows:

" But it is not always possible when an accident happens for the passenger to determine just how it happened. He is inside of the car. He hasn't any right to be outside inspecting the car, to know whether it is going safely or not. Therefore a rule has been applied in this class of cases which is applicable in this case, and from which the jury have the right to infer negligence or want of due care on the part of the common carrier. That is, where a steam car leaves the track in a place where the com-

pany has the entire control of the track, that furnishes some evidence that there was something wrong, that there was some negligence somewhere, and would authorize the jury to say, if there was no explanation, that it was negligence on the part of those who had the management of the car, the train. The same is true with reference to the electric car, the street car. Perhaps the jury cannot tell whether it was in the track, whether it was in the car, or whether it was in the speed with which the car was run; but if it was in any of them, or all of them together, all combined, then it is not material which it is. If the jury say that there was negligence somewhere with reference to it, or else it would have stayed on the track where it was designed to stay, then the jury have the right to draw the inference that the accident was caused by the negligence of some one whose duty it was to look after the condition of the track or the car, or to look after the running of the car in the particular place where it went off.

" A case arose some years ago with reference to a horse car, where this question came up, and the rule was laid down that ' the burden is on the plaintiff to prove the defendant's negligence, but there are cases where proof of the occurrence of the accident and of the exercise of due care on the part of the plaintiff is *prima facie* proof of the defendant's negligence. A railroad and its cars are constructed and adjusted to each other with the purpose that, when there is no defect in either, the cars shall remain on the track. The fact that the car runs off is evidence of defect or negligence somewhere; and where the track and the cars are under the exclusive control of the defendants, it has been held evidence of negligence sufficient to charge them, in the absence of any explanation showing that the accident happened without fault on their part. It is not incumbent on the part of the plaintiff, after proving an accident which implies negligence, to go further and show what the particular negligence was, when from the circumstances it is not in his power to do so.'

" Well, now, the defendant says, with reference to this, that it has met the position that it was put into by this rule of law from the evidence of the plaintiff that this car went off the track. The defendant says that it has explained to the jury

that there was no fault on the part of any person in the employ of the company; that is, that the track was all right, that the car was all right, and that, if it was not run more than three to five miles an hour, it was not being run at an improper speed. Well, now, it is for you to say whether, in the first place, if the track had been all right, and the car all right, and the speed was all right, it would have gone off the track; because, if it would not, then you say there is some trouble in some of the elements that must have entered into that car's going off the track. And you have to consider whether or not you are satisfied that the track was all right. It was a new track, and the man who laid it says that the company was perfectly satisfied with the track; that he had laid it properly; and that the men whose business it was to know about such things, as to what it should be at a curve, had seen it and approved it, and it was all right.

" Then you are to consider whether there had been any substantial change in the condition of the track from the time it was finished down to the time of this accident, which was soon after. Nothing has been said as to the age of the car, whether it was a new one or an old one; that is, I do not recall anything as to that; but there has been some testimony that the car was put on the track after this, and after the fender had been fixed; that it was run continuously, without any difficulty or trouble; but in considering the condition of the car you have a right to consider that it was off the track a little before this for some reason. It is true that that particular place has not been inquired into; it may not have been due to the car; it may have been due to the track at that place.

" Now, if you say the car was right and the track was right, if you believe the testimony on those two points, then you have to consider this other matter and see whether the speed was all right for the safety of the passengers in the car in view of the fact that it was a new road, that here was a curve at the foot of an incline, and whether or not there was any danger that the car would jump the track if it had too great a speed when it struck the curve. And if you say it was not running more than four or five miles an hour, then the defendant has explained all the elements that it has been claimed enter into this matter in any way. But if you say it was running at a rate of fifteen or

twenty miles an hour, or running at a rate which threw that car off the track, then you will say whether it was not an improper speed for the people who were in charge of the car to run it so that it threw it off the track and injured the people who were riding in it, or any of them.

" Now, if you should conclude that there is no negligence on the part of the company, if you say that everything has been explained so that there is nothing to show that there was any neglect on the part of the company, then the plaintiff is not entitled to recover. But if you say that either the track was not in proper condition, or the car was not in proper condition, that it was not being run, in view of the track and the car, at a proper rate of speed, and that that was the negligence that caused this accident, then the plaintiff has made out his right to recover compensation for his injury. . . .

" Now there is one other matter that I want to call your attention to in this case, and that is the effect that is to be given to the fact that some time in November, 1896, a suit was brought in the Municipal Court, in which the damages were laid at two thousand dollars. It is not material that I should explain to you that as long as this suit was pending the plaintiff could not have another suit in court. . . .

" Now the claim is on the part of the defendant that that sum was fixed by the plaintiff. Well, if it was not fixed by him, but was fixed by the attorneys, then it is not his judgment about it. But if it was fixed by him, and yet if you are satisfied that that is not enough, why then you are not to be governed by his opinion as to his damages. He has not been allowed to state to you here, you will notice, what he thought the money compensation ought to be. It is not his opinion that is wanted on that; it is yours. He has contended, or his attorneys have for him, that he should have twenty thousand dollars in the writ, but he has not said so, and if he did say so to you it would not be his opinion, it would be yours, that would be wanted, and if you said that was too much you would not give him the twenty thousand dollars; you must give him what you say is right. And if he says he wants two thousand dollars and you say that is too small, you must not be influenced by his judgment about it; you must give him what you say he is entitled to. Of course, if his state-

ment of two thousand dollars indicates to you that he did not think he was injured, and therefore his statement of the injury that has come upon him now is not his real condition, but is something that has been manufactured for this case, it comes back to his real condition ; but if you say that his real condition at that time was not as serious as it is now, but that it has gone on increasing, not from any fault of his, but from the injury that was caused to him, why then no matter what he put the sum at, at some previous time, you will say what the past has developed with reference to his injury, and say what is a fair compensation on account of the injury as you believe it to be, the loss that he has suffered, the pain and the suffering that he has endured in the past, and will also sustain and endure in the future.

" There has been some reference made to the failure of the plaintiff to call certain witnesses. It is oftentimes a matter that a jury have to consider, where testimony is within the reach of one party and not within the reach of the other, and the party does not produce the testimony, as if he has a document, a letter, or some written instrument, that is entirely within his control and he does not produce it, it is sometimes said that the jury have a right to infer that the party does not produce it when he can, because it would be against him if he did produce it. Sometimes that is true, where the witness is entirely within the power or within the control of one party or the other. But where the witness is equally within the reach of one party as well as the other, then the question would come whether there should be any inference drawn from the fact that neither party called him. Perhaps they say that he cannot do any good for us ; he cannot do any good, in the opinion of the plaintiff, for the plaintiff ; and the defendant says he cannot do any good for the defendant ; it is for the jury to say, under all the circumstances, what the fair inference is of leaving the witness off. But where one party or the other calls a witness, then you consider the testimony, and there is no occasion to comment then or to criticise one party or the other who does not call such a witness, but take the testimony of the witness as he is called.

" Some reference has been made and there has been some testimony in the case with reference to the statement of some of the witnesses at a former trial, and I will call your attention to

that, making this statement to you, that you are to take into consideration the testimony of the witness here to you ; but in considering the weight that you should give to the testimony of that witness, if you find that on a particular matter he has made a statement different from that at some prior time, whether it was testimony in a case or some statement somewhere else, you may consider how much weight you will give to the testimony here, in view of the fact that he may have made a different statement in some other place. And that is the only purpose for any reference to any former trial. It is for you to say whether the testimony here that has been given is to be affected at all by any statements that were made at any former trial at any other time. Just so far as they have made statements that are at variance with the testimony here, then you should consider whether the evidence has been purposely made differently for the sake of having it benefit the party, or whether it comes from the fact that the party believes now as he testifies now ; it only affects the weight of the testimony. It is not the testimony of the former trial that you are to consider, for that is not testimony at all. You are to consider the testimony that is given here by the witnesses. And in determining what weight to give it, you may consider whether or not they have stated differently from what they have stated to you at any previous time."

The defendant excepted to the instruction that the occurrence of the accident and the running off the track were *prima facie* proof of negligence ; and to the instruction that " if you say that either the track was not in proper condition, or the car was not in proper condition, that it was not being run, in view of the track and the car, at a proper rate of speed, . . . then the plaintiff has made out his right to recover."

The judge then said : " Well, I did not mean to say just that. I meant to say that I want the jury to understand that the running off the track must have been due to some one or the other of those different things. Suppose the track was not perfect, or the car was not perfect, or the speed was too rapid, yet if this car did not leave the track because of some of those things, then I do not mean to say that you would say the plaintiff had the right to recover. It must be due to some one or the other

of those things, as I said to you.  It must be due to some imperfection, and that imperfection must be due to some negligence on the part of the person who had charge of the track or the car, or the running of the car."

The defendant excepted also to the instruction in reference to absent witnesses; and, as to witnesses actually called, to the instruction that the only purpose of showing their testimony at the former trial was to affect the weight of their present testimony.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

The defendant also moved that the action be dismissed, for want of proper service on the defendant.

This motion was overruled; and the defendant appealed to this court.

*J. M. B. Churchill,* for the defendant.

*F. J. Daggett,* (*G. P. Wardner & H. E. Perkins* with him,) for the plaintiff.

KNOWLTON, J.   1. The defendant excepted to the refusal of the court " to rule that, upon all the evidence in the case, the defendant had proved that there was no negligence on its part, and had thus overcome the effect of the evidence of the mere running off of the track by the car, introduced by the plaintiff," and "to direct a verdict for the defendant." The refusal was right.  There was evidence that the car had run off the track about an hour before the accident, and that immediately before the accident it was running at the rate of fifteen or twenty miles an hour down a grade and around a curve, when it again ran off the track and caused the plaintiff's injury.

2. The next exception was to the instruction in regard to the evidence of negligence.  The substance of the instruction was that, from the occurrence of the accident under the circumstances testified to by the plaintiff and his brother, in the absence of any other adequate explanation, they might infer negligence of the defendant.  The judge read to the jury a part of the opinion in *Feital* v. *Middlesex Railroad,* 109 Mass. 398, including the statement that " There are cases where proof of the occurrence of the accident, and of the exercise of due care

on the part of the plaintiff, is *prima facie* proof of the defendant's negligence." The instructions were clear and correct. The portion of the opinion which was read was well adapted to the case. The expression in regard to *prima facie* proof was accompanied with such explanation and additional statement, both in the opinion and in other parts of the charge, that the jury were in no danger of being misled. *White* v. *Boston & Albany Railroad*, 144 Mass. 404. *Stevens* v. *European & North American Railway*, 66 Maine, 74. *Breen* v. *New York Central & Hudson River Railroad*, 109 N. Y. 297. *Dampman* v. *Pennsylvania Railroad*, 166 Penn. St. 520. *Ohio & Mississippi Railway* v. *Voight*, 122 Ind. 288.

3. The third of the exceptions to the instructions was followed by an explanation which took away all ground of objection to the language used. Indeed, it had been preceded by such other instructions in the original charge, that the jury could hardly have misunderstood the meaning of the judge if there had been no subsequent explanation.

4. The instructions in regard to absent witnesses were correct and sufficient.

5. In charging the jury in regard to some of the witnesses who had testified at the former trial of the case, the judge gave proper instructions. He was evidently referring to witnesses as such, and the exception taken gave him no intimation that the defendant understood his language to refer to the plaintiff as a party. It is now argued that what the plaintiff had previously testified might be evidence against him in the nature of an admission. If the attention of the judge had been directed to his testimony, the jury undoubtedly would have been instructed to that effect, if there was anything in his testimony to which such an instruction could apply. That this rule of law was in the mind of the judge is apparent from another part of the charge.

6. So far as appears, the motion to dismiss was rightly overruled. We cannot know, as matter of law, that the assistant treasurer was not an officer having charge of the defendant's business, within the meaning of the Pub. Sts. c. 161, § 36. The deputy sheriff returned a service upon the corporation by serving on that officer, and no plea in abatement was filed.

We discover no error of law in the proceedings.

*Exceptions overruled.*